**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH CHANCEY | : | |
| 3415 Englewood Street | : | CIVIL ACTION |
| Philadelphia, PA 19149 | : | |
| | : | CASE NO.: |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| MLH MSO HOLDCO, INC. | : | |
| d/b/a Ethos Cannabis | : | |
| 308 E. Lancaster Avenue | : | |
| Wynnewood, PA 19096 | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Joseph Chancey, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Plaintiff has initiated this action to redress violations by MLH MSO Holdco, Inc. d/b/a Ethos Cannabis (hereinafter referred to as "Defendant"), for violation of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, et. seq.), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 et seq.), and the Pennsylvania Human Relations Act ("PHRA")[1]. Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

1

As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

4.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

5.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

7.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.    Plaintiff is an adult, with an address as set forth in the caption.

9.    Defendant cultivates, processes and sells cannabis and medical marijuana. It is based in Pennsylvania and has operations in several states including Pennsylvania, Ohio and Massachusetts. At all times relevant herein, Plaintiff worked for Defendant at its 150 Solar Drive, Fairless Hills, Pennsylvania 19030.

10.    At all times relevant herein, Defendant acted by and through its agents, servants, and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.    Plaintiff was hired to work for Defendant on or about August 5, 2024, as Post-Harvest Technician.

13.    Plaintiff performed in the position of Post-Harvest Technician until he was unlawfully terminated on or about November 25, 2025.

14.    Plaintiff worked under the supervision of Manger – Nicholas "Nic" Santiago (hereinafter "Santiago"), and Operations Manager – Jeff Haas (hereinafter "Haas") until his unlawful termination – discussed further *infra*.

15.    During the course of his employment with Defendant, Plaintiff was a hard-working employee, who performed his job well and was not subjected to any form of progressive discipline.

3

16. During Plaintiff's employment with Defendant, he was subjected to discriminatory, hostile, and retaliatory treatment based on his disabilities, his use of FMLA leave and need for accommodations (discussed *infra*).

17. To provide context regarding Plaintiff's employment under the supervision of Santiago, Plaintiff describes the foregoing in reference to Santiago's demeanor, personality and supervisory oversight:

   a. Santiago oversaw at any given time about 30-35 employees.

   b. Santiago repeatedly used profanity and said many other unprofessional statements or comments (including calling certain employees "Nigga").

   c. Santiago was extremely tough on select employees, holding them to a different standard, treating them more harshly, and finding reasons to warn or discipline them.

   d. Santiago was concerningly aggressive and intimating, conducting himself at all times in a threating manner, including angerly yelling out: "fucking cocksucker" and looking as if he was to engage physically or throw something.

   e. Santiago was known to leave work early often to go to bars and not finish work shifts.

   f. Upon information and belief, Santiago plead guilty to assault and strangulation on two separate criminal charges in or about May of 2024, in Philadelphia County Court Docket No., MC-51-CR-0023368-2024.

18. Upon information and belief, throughout Plaintiff's tenure, numerous complaints were lodged by employees about and concerning Santiago's aforementioned conduct, including by Plaintiff himself.

4

19. Despite all the foregoing, Defendant did not take any action to stop Santiago's conduct or remove him from his managerial position to protect employees (even though they were aware of Santiago's aforesaid behavior and criminal record).

20. By in or about September of 2025 through on or about November of 2025, Santiago became extremely antagonistic towards Plaintiff.

21. While Santiago's aforesaid conduct was crude and/or generally intimidating, his hostility culminated when he *personally became angry* with Plaintiff during the last several months of Plaintiff's employment due to Plaintiff's disability and need for accommodations (including FMLA leave).

### -Disability/FMLA Violations-

22. Plaintiff has and continues to suffer from disabilities, including but not limited to chronic back problems, chronic migraines and other complications/conditions, of which Defendant's management was made aware.

23. Moreover, from the summer of 2025 through Plaintiff's termination (in or about November of 2025 – discussed further *infra*), Plaintiff was suffering from severe back spasm and pain, numbness in both legs and migraines.

24. Despite Plaintiff's aforesaid disabilities and limitations, he was able to perform the duties of his job well with Defendant; however, he did request reasonable accommodations in order to perform his job effectively, including but not limited to intermittent leave under the ADA and intermittent leave under the FMLA (starting in or about the September of 2025 after he was eligible to start utilizing the same).

25. Plaintiff was entitled to take protected intermittent leave under the FMLA for his serious health condition, including leaving work early on occasion due to flare-ups of his

conditions, without interference, restraint, or retaliation by Defendant, and without such leave being held against him or used as a basis for discipline or termination.

26.     During the last eight (8) to nine (9) months of Plaintiff's employment, Defendant transitioned to ten (10)-hour shifts.

27.     Due to flare-ups of his conditions, Plaintiff would leave shifts after approximately nine (9) hours of work.

28.     Towards the end of his employment, Plaintiff occasionally left work approximately one (1) hour early on two (2) to three (3) days per week due to his medical conditions.[2]

29.      Plaintiff use of FMLA was, in total, no more than about two (2) full days of FMLA per month (far less than an allocated 12 weeks per year).

30.     In practice, and without objection or discipline, Plaintiff utilized FMLA leave on three (3) separate occurrences in September 2025, seven (7) separate occurrences in October 2025, and four (4) separate occurrences in November 2025 prior to his termination.

31.     In response to Plaintiff's utilization of FMLA and ADA-qualifying medical leave, Santiago became extremely hostile towards Plaintiff and began targeting him for his use of the same. By way of example, and without intending to be exhaustive, Santiago:

    a.   Yelled at Plaintiff in response to Plaintiff leaving a shift 30 minutes early;

    b.   Regularly used profanity towards Plaintiff;

    c.   Told Plaintiff to give Santiago another 30 minutes and to "suck it up" in response to Plaintiff needing to leave early on FMLA;

---

[2] *See e.g., Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave in any size increments and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences); *see also Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that an employer is prohibited from counting medically necessary breaks against an employee under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co.*, 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

d. Discouraged Plaintiff from leaving work early to attend to his disabilities by telling Plaintiff to "stop being a fucking baby;"

e. Berated Plaintiff and told him to "get the fuck out of here," in response to needing to leave early because of a flare up of his disabilities and in accordance with his aforementioned FMLA entitlement;

f. Repeatably made references to "others picking up the slack for you;" when Plaintiff would leave early due to his disabilities;

g. Routinely made other extremely rude and derogatory comments;

h. Routinely required Plaintiff to remain at work and continue performing his job duties despite Plaintiff requesting to utilize intermittent medical leave for disability-related symptoms and flare-ups; and

i. At a company party in or about May 2025, Plaintiff experienced a flare-up of his disabilities and requested from Santiago that he be permitted to leave early and utilize intermittent medical leave to treat for the same. In response, Santiago told Plaintiff that employees were going to be permitted to leave the party early anyway and that Plaintiff should "*wait until everyone else left*," despite Plaintiff explaining that he was experiencing disability-related symptoms and needed to leave early.

32.     In addition to the foregoing, Santiago would also ask Plaintiff in a rude and condescending manner whether he was "about to ask to leave early" or "take some FMLA *vacation time*."

33.     Furthermore, while similarly situated employees were permitted to make up missed time by adjusting their schedules, including arriving early, staying late, or working on different

days, Plaintiff was not afforded the same flexibility when requesting to make up time associated with his FMLA leave.

34.     For example, when Plaintiff requested to make up time that he missed under the FMLA/ADA, Santiago responded in a derogatory manner, stating words to the effect of: "you don't know how terminology works… *you are not scheduled asshole,"* and insinuated that Plaintiff did not understand scheduling.

35.     Plaintiff attempted to explain his medical conditions and limitations to Santiago, but Santiago disregarded Plaintiff's explanations and continued to subject him to discrimination and significant hostility.

36.     In addition to seeking intermittent medical leave, Plaintiff would occasionally ask to take short breaks due to his conditions.

37.     Santiago also responded to these requests with hostility and disregard, often instructing Plaintiff to "*get moving*" when Plaintiff needed to short break due to a flare up of his disabilities.

38.     Additionally, Santiago knew that Plaintiff suffered from migraines and that a trigger for his migraines was noise.

39.     When Plaintiff would request to leave work early due to migraines, Santiago would tell him to remain at work and "put earplugs in," despite knowledge of Plaintiff's condition.

40.     Santiago's aforesaid severe and/or pervasive conduct created a hostile and abusive work environment for Plaintiff.

41.     Plaintiff raised complaints with Human Resources ("HR") personnel, including Rita (last name unknown), regarding the aforementioned treatment and conduct to which Plaintiff had been subjected.

42.     Upon information and belief, HR maintained a policy and/or practice requiring employees to create a "ticket" in order to report workplace concerns or request intervention.

43.     However, whenever Plaintiff attempted to submit complaints or open such tickets regarding discrimination, harassment, retaliation, and/or related workplace issues, Plaintiff's complaints were routinely dismissed, closed, and/or marked as "resolved" without any meaningful investigation or follow-up.

44.     As a result of the aforesaid hostile work environment and HR's refusal to properly investigate and remedy the same, Plaintiff's disabilities were exacerbated.

### -Plaintiff's Retaliatory/Discriminatory Termination-

45.     On or about November 25, 2025, Plaintiff was blindsided when he was terminated from his employment, despite being a model employee, and working very hard.

46.     Defendant has asserted that Plaintiff's termination was based on an interaction that occurred approximately one (1) week prior to his actual termination date.

47.     The individual involved in that interaction, Post-Harvest Technician, Wayne Keys ("Keys"), was known to be confrontational and aggressive in the workplace.

48.     Upon inform and belief, Post Harvest Technician, Michael Amato (hereinafter "Amato") who rode to work with Plaintiff on a daily basis until Plaintiff's termination, complained to HR, including Rita regarding Keys' hostility and aggressive behavior, including stating that Amato felt "unsafe because of Keys."

49.     On or about November 20, 2025, Keys yelled at Plaintiff and made offensive remarks, including calling Plaintiff a "pussy" and making other derogatory statements.

50.     Plaintiff responded saying something to the effect of him not having his own vehicle and having to plead for rides from others, in response to his definition of a real man.

9

51.    Plaintiff's statement to Keys was very mild in contrast to Keys' statements and actions.

52.    Keys continued yelling and using profanity, until Plaintiff's high-level manager, Haas walked into the area where Keys and Plaintiff were speaking and asked Keys to leave the area in the midst of his outburst.

53.    Keys refused to comply, cursed at Haas, and instead directed that Plaintiff be removed.

54.    Because Keys refused to comply with Haas's directive, Plaintiff removed himself from the area and expressed to Haas as he was walking out with him how Keys treated him.

55.    Plaintiff also reported the aforesaid incident with Keys to Santiago, who dismissed Plaintiff's report, stating "it's no big deal" and said something to the effect of "*we all know* how Wayne is."

56.    On or about November 25, 2025, Plaintiff was terminated from his employment, for the aforementioned incident with Keys.

57.    Upon information and belief, Keys was not disciplined or terminated despite engaging in more egregious conduct than Plaintiff, including insubordination toward management.

58.    Upon information and belief, Keys had engaged in similar conduct toward other employees without consequence as well.

59.    For example, upon information and belief, after Plaintiff's termination, Keys made statements suggesting he had gotten other employees fired following confrontations and that he is "7-0".[3]

---

[3] Upon information and belief, Keys was terminated in or about December 2025 for theft of company property.

60. Defendant's reliance on this incident as justification for Plaintiff's termination was completely pretextual.

61. Plaintiff was, in fact, terminated because of his use of FMLA leave, his need for accommodations, his actual and/or perceived disabilities, and his complaints regarding discriminatory treatment.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate; [3] Retaliation; and [4] Hostile Work Environment)**

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

64. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times.

65. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent time off to treat for and manage his aforesaid disabilities, as well as the ability to take occasional short breaks.

66. At times, Defendant's management refused to accommodate Plaintiff's disabilities and even intimidate him from utilizing protected medical leave.

67. After being subjected to a hostile work environment for months, Plaintiff was abruptly terminated on or about November 25, 2025, for completely pretextual reasons.

68. Plaintiff believes and therefore avers that his disabilities were a motivating and/or determinative factor in Defendant's decision to terminate his employment.

11

69.    Plaintiff also believes and avers that he was terminated in retaliation for engaging in protected activity under the ADA.

70.    Defendant's actions as aforesaid constitute violations of the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

71.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72.    After completing one year of employment with Defendant, Plaintiff became an eligible employee under the FMLA and Defendant was an employer subject to the FMLA.

73.    Plaintiff suffered from serious health conditions within the meaning of the FMLA.

74.    As a result of Plaintiff's aforesaid serious health conditions, Plaintiff required intermittent leave, including but not limited to leaving work early on occasion to treat for and manage his conditions.

75.    Plaintiff kept Defendant informed of his serious health conditions and need for intermittent leave.

76.    Plaintiff exercised his rights under the FMLA by requesting and/or utilizing intermittent leave, including leaving work early when medically necessary.

77.    Plaintiff was subjected to hostility and animosity by Defendant's management, including Santiago, as a result of his aforesaid use of FMLA leave, including through discouragement and derogatory comments.

78.    Plaintiff was then abruptly terminated on or about November 25, 2025, for completely pretextual reasons.

12

79.    Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights; (2) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA (such as subjecting him to discriminatory and derogatory comments about needed to leave work early for his serious health condition); and/or (3) considering Plaintiff's FMLA leave needs in making the decision to terminate him.

80.    Defendant's actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:        _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: May 11, 2026

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Joseph Chancey | : | CIVIL ACTION |
| v. | : | |
| MLH MSO Holdco, Inc. d/b/a Ethos Cannabis | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (x )

| | | |
|---|---|---|
| 5/11/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?  Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CHANCEY, JOSEPH

**(b)** County of Residence of First Listed Plaintiff **Philadelphia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
MLH MSO HOLDCO, INC. d/b/a ETHOS CANNABIS

County of Residence of First Listed Defendant **Montgomery**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 840 Trademark | ☐ 460 Deportation |
| | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury – Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 5/11/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____